USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8-13-15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

US DIAGNOSTICS, LLC,

                          **Plaintiff,**

- against -

DEPENDABLE DIABETIC SUPPLY, LLC, et al.,

                          **Defendants.**

REPORT AND
RECOMMENDATION

13-CV-6480 (ALC)(RLE)

To the HONORABLE ANDREW L. CARTER, JR., U.S.D.J.:

## I. INTRODUCTION

Plaintiff US Diagnostics, LLC, ("US Diagnostics") commenced this action against Defendants Dependable Diabetic Supply ("DDS"), Suncoast Billing Solutions, LLC ("Suncoast"), and *pro se* Defendant Jonathan Johnson alleging breach of contract, tortious interference and conversion. (Doc. No 1) On September 5, 2014, the Honorable Andrew L. Carter, Jr., entered default judgment against Defendants and referred the case to the undersigned for an inquest on damages. (Doc. No. 36) For the reasons that follow, I recommend that the Court enter judgment for US Diagnostics in the amount of **$106,797.81**.

## II. JURISDICTION

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the Parties are citizens of different states and the amount in controversy exceeds $75,000. Plaintiff US Diagnostics is a limited liability company with its principal place of business in New Jersey. (Doc. No. 1 at 1.) Defendants DDS and Suncoast are limited liability companies with their principal places of business in Florida. Defendant Johnson is a resident in the state of New York. (*Id.*) Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2).

## III. BACKGROUND

### A. Factual Background

Defendant Johnson is the sole member of DDS. (Doc. No. 1, Ex. 1) On January 24, 2012, Johnson entered into a Security Agreement and Promissory Note with Plaintiff US Diagnostics in which Johnson agreed to transfer all of DDS's financial benefit to US Diagnostics. (*Id.*) The agreement stated:

> Johnson agrees to be appointed the sole member of DDS and Johnson agrees to sell, transfer or operate all interest in DDS, including but not limited [sic] business operations, mergers, acquisitions or any business transactions, at the direction of [US Diagnostics], at a time specific set forth by [US Diagnostics].

(*Id.*) Johnson also agreed that, unless authorized or directed to do so by US Diagnostics, he would not sell DDS assets or conduct business outside of the ordinary course. (*Id.*)

By letter dated August 16, 2013, US Diagnostics informed Johnson that it was transferring all right, title, and interest in DDS pursuant to sections 2 and 3 of the Security Agreement. (Doc. No. 1, Ex. 2) US Diagnostics further informed Johnson that in preparation for the transfer it had conducted an audit and discovered several unauthorized expenditures. (*Id.*) These expenditures included $44,620 owed by Suncoast Billing Solutions to DDS, $4,913.68 in insurance expenses, and $18,641.86 in personal expenses charged to DDS. (*Id.*; Doc. No. 1, Ex. 11) After asking Johnson for explanations for his spending, US Diagnostics directed him not to use any company credit or debit cards and informed him that he would be personally liable for any expenditure made after the date of the letter. (*Id.*)

By letter dated August 27, 2013, US Diagnostics informed Johnson that his services were no longer required and instructed him to return his company laptop computer. (Doc. No. 1, Ex. 3) On August 28, 2013, Johnson informed Dawn Passamonte, Edward Letko, Jon Letko, and Jim

Letko (a mix of employees from DDS and US Diagnostics) that he was no longer Managing Director and that all management issues should be raised with Jim Letko moving forward. (Doc. No. 1, Ex. 4) On August 29, 2013, US Diagnostics again asked Johnson to return his company laptop computer and gave him an August 30, 2013 deadline to comply. (Doc. No. 1, Ex. 5) By email dated September 3, 2013, counsel for US Diagnostics asked Johnson to meet in person to execute documents completing the transfer of DDS to US Diagnostics. (Doc. No. 1, Ex. 6)

Despite the terms of the Security Agreement and Johnson's own acknowledgment that he was no longer Managing Director of DDS, on August 30, 2013, Johnson opened a checking account under DDS's name and transferred $30,000 from DDS into the new account. (Doc. No. 1, Ex. 12)

## B. Procedural Background

On September 13, 2013, US Diagnostics filed a Complaint against Johnson, DDS, and Suncoast alleging that Johnson had incurred $98,175.54 in unauthorized expenses in violation of the Security Agreement: 1) $44,620 in a loan to Suncoast; 2) $4,913.68 in insurance expenses; 3) $18,641.86 in personal expenses; 4) and $30,000 in a transfer to a checking account to which Johnson had sole access. (Doc. No. 1) That same day, the Honorable Andrew L. Carter, Jr., ordered Defendants to, *inter alia*: 1) show cause at a conference to be held on October 3, 2013, why they should not be preliminary enjoyed from transferring or using any assets of DDS; 2) file answering papers by September 26, 2013. (Doc. No. 2) On September 16, 2013, US Diagnostics filed an Affidavit of Service indicating that Johnson had been personally served on September 18, 2013, at 8:45 a.m. (Doc. No. 4) Suncoast and DDS were served on October 10, 2013. (Doc. No. 6-7) After a request by US Diagnostics, Judge Carter rescheduled the "show cause" hearing for October 2, 2013. (Doc. No. 5) After the hearing, Judge Carter removed Johnson's signatory

authority from DDS's bank accounts. (Doc. No. 9 at 3.)

On November 15, 2013, having been informed that the case had been settled, Judge Carter issued an Order of Discontinuance and gave the Parties thirty days to restore the action if the settlement had not been finalized. (Doc. No. 16) On December 11, 2013, US Diagnostics filed a letter motion to reopen the case alleging that although a draft settlement agreement had been circulated, Johhson had not executed the agreement. (Doc. No. 17) After granting US Diagnostics' motion, the Court held a conference on April 17, 2014. (Doc. No. 20) Johnson failed to appear. On May 16, 2014, US Diagnostics filed a "Request to Enter Default against Dependable Diabetic Supply, LLC" for failure to appear in this action. (Doc. No. 25) That same day, the Clerk issued Certificates of Default as to Suncoast, Johnson, and DDS. (Doc. Nos. 27-29) On June 19, 2014, US Diagnostics filed a Motion for Default Judgement and a supporting declaration. (Doc. No. 31-32)

On July 24, 2014, Judge Carter issued an "Order to Show Cause Seeking Default Judgment Against Defendants Suncoast Billing Solutions, LLC, and Jonathan Johnson" directing Defendants to show cause at a conference held on September 5, 2014, why: 1) default judgement should not be entered against Suncoast and Johnson; 2) all funds contained in DDS's checking accounts should not be unfrozen; 3) an inquest to determine damages should not be scheduled; 4) Johnson and his agent should not be enjoined from transferring or using DDS assets; and 5) US Diagnostics should not be awarded all further relief the Court deems proper. (Doc. No. 34) After Johnson failed to attend the September 5 hearing, the Court entered default judgment against the Defendants with interest accruing at a rate of nine percent from September 5, 2014. (Doc. No. 36)

On September 19, 2015, Judge Carter referred the action to the undersigned for an

inquest on damages. (Doc. No. 37) The undersigned held an inquest hearing on October 9, 2014, which Defendants did not attend. (Doc. No. 38) On October 28, 2015, US Diagnostics filed the Declaration of Suzanne Bradford, an accountant for DDS, in support of the default judgment award. (Doc. No. 39)

### III. DISCUSSION

#### A. Standard for Default Judgment

Rule 55 of the Federal Rules of Civil Procedure requires that a court enter default judgment against a party who has "failed to plead or otherwise defend." R. Civ. P. 55(a). After default judgment, a court accepts factual allegations as true, except those relating to damages. *Cotton v. Slone*, 4 F.3d 176 (2d Cir. 1993). While a court usually conducts an inquest hearing to determine damages, a hearing is not necessary where extensive documentary evidence is available. R. Civ. P. 55(b)(2); *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105 (2d Cir. 1997). A court should take any necessary steps to establish damages with reasonable certainty. *Id.* at 111. The damages awarded must not "differ in kind from" what the plaintiff demands in the pleadings. R. Civ. P. 54(c). *See also, Silge v. Merz*, 510 F.3d 157 (2d Cir. 2007).

Here, the Court ordered default judgment after Defendants failed to retain counsel and appear at a conference and a subsequent default hearing held by the Court. Defendants further failed to appear at an inquest hearing on damages and did not provide any documentary evidence regarding damages. US Diagnostics has submitted sufficient documentary evidence to allow for a computation of damages. US Diagnostics seeks a total of $146,995.17. (Doc. No. 39 at 4.)

5

**B.     Computation of Damages**

   **1. Damages for Breach of Contract**

Damages for breach of contract are determined by calculating the "amount necessary to put the plaintiff in the same economic position he would have been in had the defendant fulfilled his contract." *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490 (2d Cir. 1995). Unless the amount of damages is certain, a court entering default judgment is required to make an independent determination of the sum it awards. Fed. R Civ. P. 55. A court awards prejudgment interest according to the contractual interest rate. *Astoria Fed. Sav. and Loan Ass'n v. Rambalakos*, 49 A.D.2d 715, 716 (2d Dep't 1975).

US Diagnostics argues in the Bradford Declaration that had Johnson abided by the terms of the Security Agreement with US Diagnostics, DDS's assets at the time of transfer to US Diagnostics would have included $30,000 that Johnson improperly withdrew to a separate bank account to which only he had access, (Doc. No. 39 at 6-7), $21,207.49 that Johnson spent on personal matters unsupported by receipts evidencing a business purpose, (*Id.* at 9-16), $113,357.51 in personal loans from DDS that Johnson did not repay, (*Id.* at 20), $2,000 in payroll loans of which Johnson only repaid $1,000, (*Id.* at 22-23), $54,288.90 that Johnson improperly transferred to Suncoast, (*Id.* at 25-27), and $4962.78 in corporate assets wasted by contracts Johnson entered into on behalf of DDS after he was instructed to cease using DDS funds. (*Id.* at 29-35.) However, in the Complaint US Diagnostics solely pleaded that Johnson owed $98,175.54 in unauthorized expenses: 1) $44,620 in a loan to Suncoast (Doc. No. 1, Ex. 11); 2) $4,913.68 in insurance expenses (*Id.*, Ex. 9); 3) $18,641.86 in personal expenses (*Id.*, Ex. 10); 4) and $30,000 in a transfer to a checking account to which Johnson had sole access (*Id.*, Ex. 12).

Federal Rule of Procedure 54 and Due Process require that a default judgment "not differ in kind from, or exceed in amount, what is demanded in the pleadings." *See Lliviganay v. Cipriani, 110 LLC*, No. 09-CV-0737 (LAK), 2009 WL 1044606, at *1 (S.D.N.Y. Apr. 14, 2009).

> [The theory of this provision] is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action. It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award.

*Integrity Commc'ns Corp. v. Baker*, No. 10-CV-3238 (DAB) (RLE), 2013 WL 4830948, at *3 (S.D.N.Y. Sept. 10, 2013) (quoting *Silge v. Merz*, 510 F.3d 157, 159 (2d Cir.2007)). The Court has made an independent determination of the amount owed to US Diagnostics based upon the pleadings and a review of the records documenting Johnson's misconduct and recommends an award of damages of **$98,175.54**. In addition, applying the nine percent rate[1] ordered by Judge Carter, as of August 27, 2015, US Diagnostics would have accrued $8,622.27 in interest fees.[2] Therefore, I recommend an interest award of **$8,622.27**, increased proportionally for each day after August 27, until this Report and Recommendation is adopted or modified.

## IV. CONCLUSION

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the

---

[1] *See also* N.Y. C.P.L.R. 5003;5004 (McKinney)

[2] The Court used the following formula to calculate the damages award: Principal x Annual Interest Rate x Number of Months ÷ 12. Here, $98,175.54 x .09 x 11.71 ÷ 12.

7

Honorable Andrew L. Carter, Jr., 40 Foley, Room 435, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 1970, New York, New York 10007. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn,* 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(d).

**DATED: August 13, 2015**
**New York, New York**

Respectfully Submitted,

*[signature]*

The Honorable Ronald L. Ellis
United States Magistrate Judge